UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAMIEN GREEN,

          Plaintiff,

   v.                                        Case No. 24-cv-1040-bhl

JOHN KIND,

          Defendant.

---

## DECISION AND ORDER

---

Plaintiff Damien Green, who is representing himself, is proceeding on an Eighth Amendment failure-to-protect claim against Defendant Security Director John Kind in connection with allegations that Kind denied his Special Protection Need (SPN) requests at the Green Bay Correctional Institution between September 2023 and December 2023. Dkt. Nos. 1 & 7. On October 17, 2024, Defendant Kind filed a motion for summary judgment on exhaustion grounds. Dkt. No. 28. Because the undisputed facts show that Green's inmate complaints did not notify the institution of the relevant issue, and because his inmate complaint appeals were properly "rejected" as untimely filed, Green did not complete exhaustion prior to bringing this lawsuit. Therefore, the Court will grant Defendant's motion for summary judgment and dismiss this case without prejudice.

## UNDISPUTED FACTS[1]

In this lawsuit, Green alleges that he was threatened by two inmates—one who claimed that Green owed him money and another that claimed that Green was a "rat"—and Green "put in

---

[1] Green's "response" to Defendant's Proposed Findings of Facts writes the word "dispute" next to every proposed fact without explanation and without citations to relevant evidence. *See* Dkt. No. 40. As explained in the Court's Summary Judgment Notice and Order, to properly dispute a proposed fact, Green was required to explain why he disagreed with a particular proposed fact and provide citations to evidence supporting his position. Dkt. No. 32. Green's "response" is inadequate and therefore Defendant's Proposed Findings of Fact are deemed undisputed.

SPN's on both inmates." Dkt. No. 1 at 13. An SPN is a request for separation from specific inmates. *Id*. Security Director Kind allegedly denied Green's SPN requests regarding those two inmates sometime between September 2023 and December 2023; and Green believed he would be placed in general population with those two inmates. Dkt. Nos. 1 & 7.

Green filed nine inmate complaints between September 2023 and November 2023, but none of those inmate complaints involved threats from these two inmates or requests to be separated from them. Dkt. No. 30, ¶¶4-6; *see also* Dkt. No. 31-1 at 15. Green filed two more complaints in December 2023. Both of his December 2023 inmate complaints related to threats he claimed he had received from inmates, but, as detailed below, neither mentioned his requests for an SPN (i.e. separation from specific inmates). Dkt. No. 30, ¶7; *see also* Dkt. No. 31-2 & 31-3.

On December 5, 2023, Green filed GBCI-2023-18313 alleging, "Mr. Kind, security failed to protect my safety from these inmates in the north from harming me." Dkt. No. 31-2 at 11. Green noted that he was being called a "rat" due to reporting drug sales by inmates in his unit. *Id*. at 11-12. Green's inmate complaint did not mention any SPN requests against any specific inmate. It did not identify when he claimed to have filed any SPN requests, when any SPN requests were allegedly denied, or the reason for any alleged denial. *See id*. Institution Complaint Examiner (ICE) DeGroot recommended dismissing the inmate complaint because Green had already been "removed from general population and placed into the RHU on TLU pending protective confinement." *Id*. at 2. The ICE concluded the issue raised was moot because Green was already in Protective Confinement (PC) status in a different unit. *See id*. The Reviewing Authority (RA) accepted the recommendation and dismissed the inmate complaint on December 29, 2023. *Id*. at 3. On January 1, 2024, Green drafted an appeal reiterating the same issue from his inmate complaint. *Id*. at 14. Green's appeal *still* did not complain about any alleged denial of his SPN

2

requests or explain that he wanted SPN protection when he returned to general population *in addition* to the PC status he had already been placed in. *See id*. The Corrections Complaint Examiner (CCE) received the appeal on January 22, 2024 and recommended "rejecting" the appeal as untimely filed beyond 14 days without a good cause plea. *Id*. at 5. The CCE noted that the ICE's decision was rendered on 12/29/23; therefore, Green should have filed his appeal by 1/12/24. *Id*. He noted that, although the appeal was "signed" 1/1/24, it was not "postmarked" for mailing to Ms. Swan until 1/17/24, and the CCE did not receive it until 1/22/24. *Id*. Thus, even taking into consideration the four-day grace period under the prison mailbox rule, the appeal was still untimely because it was filed five days late without any purported explanation of good cause. *Id*. The CCE noted, "had Mr. Green utilized the normal and easily accessible channels, rather than for an inexplicable reason mailing it to Ms. Swan for her to mail to the CCE office, the complaint would not have been untimely." *Id*. The Office of the Secretary (OOS) accepted the recommendation and "rejected" the appeal as untimely filed. *Id*. at 7.

On December 11, 2023, Green filed GBCI-2023-18677 which alleged, "I was forced down to seg for PC by warden stevens, and not put into the Treatment Center or another part of the prison for PC." Dkt. No. 31-3 at 10. Green noted that he should not be "treated like a seg inmate" when he reported illegal activity in his unit in good faith. *Id*. at 11. He stated that he wanted to go to the "Treatment Center" or a different area of the prison that allowed more privileges like phone use, visitation, and recreation opportunities. *Id*. at 10-11. Green again did not mention that he had filed a request for a SPN against specific inmates, when it was filed, when it was denied, and the stated reason for the denial. *See id*. ICE DeGroot recommended dismissing the inmate complaint because an inmate's housing location when on PC was an administrative decision that took into consideration all of the needs of the institution; therefore, "no violations have occurred." *Id*. at 2.

3

The RA accepted the recommendation and dismissed the inmate complaint on December 29, 2023. *Id*. at 3. On January 19, 2024, Green drafted an appeal reiterating the same issues from his inmate complaint and he still did not raise the issue about alleged denial of his SPN requests. *Id*. at 13. Green explained that his appeal was being filed late because he was waiting on his family to send him more money and stamps. *Id.* The CCE recommended "rejecting" the appeal as untimely filed beyond 14 days without a good cause plea because there was no provision in the Inmate Complaint Review System (ICRS) that allowed for a late appeal for lack of funding. *Id*. at 5. The OOS accepted the recommendation and "rejected" the appeal as untimely filed. *Id*. at 7.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Celotex *Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Ames *v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

- (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

- (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**ANALYSIS**

Defendant asserts that he is entitled to summary judgment because Green's inmate complaints did not notify the institution of the relevant issue, and even if it did, his inmate complaint appeals were properly "rejected" as untimely filed without good cause. *See* Dkt. Nos. 29 & 42. Therefore, Defendant argues that Green failed to exhaust administrative remedies prior to bringing this lawsuit.

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "To satisfy the exhaustion requirement, an inmate must take each of the steps prescribed by the state's administrative rules governing prison grievances." *See Chambers v. Sood,* 956 F.3d 979, 983 (7th Cir. 2020) (citing *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019)). "[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

Wisconsin has established the ICRS to review inmate complaints. Wis. Admin. Code §DOC 310.05. Inmates must file an inmate complaint with the ICE within 14 days of the relevant occurrence. §DOC 310.07(2). "A complaint must contain sufficient information for the department to investigate and decide the complaint." §DOC 310.07(6). The inmate complaint "need not lay out the facts, articulate legal theories, or demand particular relief." *Strong v. David,*

5

297 F.3d 646, 649 (7th Cir. 2002). But the inmate complaint must "alert [] the prison to the nature of the wrong for which redress is sought." *Id.* at 650. The inmate complaint must provide enough facts to give defendants "notice of, and an opportunity to correct, a problem." *Price v. Friedrich*, 816 F. App'x 8, 10 (7th Cir. 2020) (quoting *Schillinger v. Kiley*, 954 F.3d 990, 995–96 (7th Cir. 2020)).

"At the discretion of the ICE, a late complaint may be accepted for good cause." §DOC 310.07(2). "An inmate shall request to file a late complaint in the written complaint and explicitly provide the reason for the late filing." *Id*. ICE may reject an inmate complaint submitted "beyond 14 days after the date of the occurrence giving rise to the complaint and provid[ing] no good cause" for extending the time limits. §DOC 310.10(6)(e). Absent an abuse in discretion, it is not a district court's role to override an examiner's decision to refrain from finding good cause for the delay, and "[t]hat discretion rests solely within the authority of [the examiner]." *Clark v. Spittle*, No. 04-C-119-C, 2004 WL 941206, at *1 (W.D. Wis. Apr. 30, 2004).

An inmate complaint that is dismissed on the merits must be appealed to the CCE within 14 days after the date of the RA's decision or if the inmate does not receive a decision 45 days after the date the ICE enters the complaint. §DOC 310.09(1). The CCE may recommend "rejection" of an appeal that is not timely filed within 14 days after the date of the RA's decision. §DOC 310.12(5). "Upon good cause as determined by the CCE, an appeal filed later than 14 days after the date of the reviewing authority decision may be accepted." §DOC 310.12(6). "For all accepted appeals, the CCE shall recommend that the reviewing authority decision be affirmed or dismissed, in whole or in part, and send its recommendation to the secretary within 45 days of receipt of the appeal." §DOC 310.12(9). The Secretary shall make a decision within 45 days following receipt of the CCE's recommendation and that decision is final. §DOC 310.13(1)-(3).

An inmate complaint or appeal that is properly "rejected" based on a procedural defect fails the exhaustion requirement. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). This is true because "the benefits of exhaustion" can be realized only if the prison grievance system is given a fair opportunity to consider the grievance on the merits. *Woodford v. Ngo,* 548 U.S. 81, 95 (2006). If noncompliance with the procedural rules "carries no significant sanction," a prisoner who does not want to participate in the prison grievance system "will have little incentive to comply with the system's procedural rules." *Id*. Indeed, the prisoner would be able to file deficient inmate complaints then proceed directly to federal court, wholly bypassing the institution's review of the merits. *Id*.

Based on the undisputed facts, Green's claims are barred as unexhausted because he did not file any inmate complaints relating to Security Director Kind's alleged denial of his SPN requests between September 2023 and December 2023. In fact, Green did not file any inmate complaints even tangentially related to threats from other inmates between September 2023 and November 2023. And, while he filed two inmate complaints in December 2023 relating to inmate threats, neither complaint raised the SPN issue to give the institution adequate notice and opportunity to resolve it.

Green's first December 2023 inmate complaint, GBCI-2023-18313, alleged that Green was being threatened by inmates in the north, but it did not mention any thing about wanting an SPN, *i.e*., a separation order from two specific inmates, for when he returned to general population. Given that there are many forms of protection at the institution, the ICE reasonably interpreted Green's inmate complaint as requesting "protective custody" status in a different unit, which Green already had by the time the ICE reviewed the inmate complaint, so he recommended dismissing the inmate complaint as moot. Unhappy with the decision, Green appealed the decision, but he

*still* did not explain that he wanted an SPN with respect to two specific inmates for when he returned to general population *in addition* to immediate "protective custody" status in a different unit. To properly exhaust, Green was required to file an inmate complaint that contained "sufficient information for the department to investigate and decide the complaint." *See* § DOC 310.07(6). Given that there are different forms of protection available at the institution, that would have required Green to specifically identify the form of protection he wanted (an SPN) to give the institution adequate notice and opportunity to resolve the relevant issue. Green did not do so in his initial inmate complaint or in his appeal (which could have clarified that the ICE had misinterpreted his inmate complaint.) The institution therefore did not get an opportunity to investigate or resolve the relevant issue; and inmate complaint GBCI-2023-18313 did not exhaust administrative remedies.

Green's second inmate complaint, GBCI-2023-18677, did not involve a protection issue at all. That inmate complaint involved Green's dissatisfaction with prison policy regarding the conditions of his confinement—specifically, the fact that his good faith reporting of drug sales in his unit landed him in a *more* restrictive housing unit. Green argued that he should not be punished for reporting rule violations and it would dissuade reporting in the future. Green requested more privileges, and to be moved to the treatment center or a different part of the institution with more freedom, but again he never mentioned any request for an SPN for when he returned to general population in his own unit. The institution, therefore, was never notified about the relevant SPN issue and it did not get an opportunity to resolve the correct issue before being haled into court. Therefore, inmate complaint GBCI-2023-18677 also did not exhaust administrative remedies.

Additionally, the record confirms that the institution's rejection of Green's inmate complaint appeals as untimely filed without good cause was appropriate. This is an additional and

independent basis for concluding that Green did not complete the exhaustion process prior to bringing this lawsuit. Green's first untimely appeal was properly rejected as untimely because it contained no good cause plea at all, as required by §§ DOC 310.10(6)(e) & DOC 310.12(5). And the institution's conclusion that he failed to satisfy the good cause standard for his second untimely appeal is also supported. The CCE concluded that the ICRS did not have any provision for tardy filings based on lack of funding, a reasonable interpretation of the rules given that an inmate is in control of how and when he chooses to use his funds. *See e.g. Schmidt v. Esser*, No. 15-CV-538-WMC, 2018 WL 4964521, at *2–3 (W.D. Wis. Oct. 15, 2018) ("To determine whether the examiner abused his discretion by not affording plaintiff a good cause exemption…the relevant question is whether plaintiff's failure to file his claims in a timely manner was due to circumstances that were reasonably beyond his control."); *see e.g. Jones v. Frank*, No. 07-CV-141-BBC, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008) (noting that a district court should not disrupt an examiner's good cause determination unless it was "clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts."). An inmate complaint or appeal that is properly "rejected" based on a procedural defect does not fulfill the exhaustion requirement. *Conyers,* 416 F.3d at 584. Therefore, Defendant has met his burden to show that Green did not exhaust administrative remedies prior to bringing this lawsuit.

In response, Green provides additional facts regarding the merits of his case. Dkt. No. 39. Green also states that certain lieutenants that he spoke to had "all the info" to be adequately notified about his requests for an SPN against two specific inmates. *Id*. at 6. The Court, however, has no judicial discretion to make a merits-based exception to exhaustion. *See Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016). Green's failure to properly exhaust administrative remedies forecloses analysis of the claim on the merits. And Green was required to file his inmate complaints and

9

Case 2:24-cv-01040-BHL   Filed 12/23/24   Page 9 of 11   Document 43

appeals "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. He could not satisfy exhaustion by informally talking to lieutenants and giving them "all the info." He had to file an inmate complaint about the denial of his SPN requests, which he never did. Accordingly, Defendant is entitled to summary judgment and the Court will dismiss this case without prejudice based on Green's failure to exhaust administrative remedies prior to bringing this lawsuit.

## CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment on exhaustion grounds (Dkt. No. 28) is **GRANTED**; and the case is **DISMISSED without prejudice.** The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 23, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.